Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
CROWELL LAW
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VOLTAGE PICTURES, LLC, GLACIER FILMS (USA), INC.**, and **GLACIER FILMS 1, LLC**,<br><br>Plaintiffs,<br><br>v.<br><br>**DOE-50.186.40.95,**<br><br>Defendant. | Case No.: 3:15-cv-0668<br><br>COMPLAINT<br><br>COPYRIGHT INFRINGEMENT<br><br>ORS 647.105 – State Trademark<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiffs Voltage Pictures, LLC, ("Voltage") and Glacier Films (USA), Inc., and Glacier Films 1, LLC, ("Glacier") complain and allege as follows:

JURISDICTION AND VENUE

1. This is a suit for copyright infringement under 17 U.S.C. §§ 101 et seq. ("The Copyright Act") and for a violation of ORS 647.105, Oregon's State Trademark Law.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as the defendant is believed to reside in this district.

PARTIES

PLAINTIFFS

5.     Plaintiff Voltage is a California Limited Liability Company, a producer of motion pictures, and is a producer of the motion picture titled *American Heist,* released in 2015.

6.     Plaintiff Glacier Films (USA), Inc., is a Delaware Corporation, a producer of motion pictures and a producer of *American Heist*.

7.     Plaintiff Glacier Films 1, LLC, is a Louisiana Limited Liability Company and a motion picture production company.

8.     Plaintiffs Voltage, Glacier Films (USA), Inc., and Glacier Films 1, LLC, (generally referenced as "plaintiffs" herein) are each holders of interests in the motion picture *American Heist,* released in 2015. Each of the plaintiffs are suffering notable and irreparable harm though piracy. Plaintiffs come to court seeking relief as the motion picture *American Heist* is currently one of the top downloaded movies though BitTorrent with over 100,000 confirmed infringing Internet Protocol ("IP") addresses observed in the United States and thousands of those IP addresses believed to be traced to individuals in Oregon.

The Rights of Voltage

9.     Voltage has sole and exclusive rights to use the mark VOLTAGE PICTURES in association with its goods and services both within the State of Oregon and nationwide.

10.    Voltage marks its works with the trademark VOLTAGE PICTURES to distinguish its products from others and to identify it as the source of its products.

11.     In the marketing of *American Heist*, Voltage has branded both marketing materials and the motion picture with its famous, distinctive and registered trademark, VOLTAGE PICTURES.

12.     The mark VOLTAGE PICTURES, and design, has been registered with the State of Oregon pursuant to ORS 647.015, Registry Number 42677.

## The rights of GLACIER

13. *American Heist* is a notable motion picture that was scheduled for widespread theatrical release in North American in January of 2015, but was wrongfully released on BitTorrent and is now being widely pirated limiting its ability to gain access to and benefit from conventional market outlets.

14.     Glacier Films (USA), Inc. is the registered copyright holder of completed the motion picture *American Heist,* which has been registered with the United States Copyright Office in 2015 prior to the filing of this action, Registration No. pending.

15.     Glacier Films 1, LLC is the registered copyright holder of the screenplay for *American Heist*, which has been registered with the United States Copyright Office, Registration No. PAu-3681371, 2013.

16.     The motion picture and screenplay contain original material that is copyrightable subject matter under the laws of the United States.

17.     Under The Copyright Act, plaintiffs are the proprietors of copyrights and interests necessary to being suit.

18.     The motion picture is currently offered for sale in commerce.

19.     Defendant had notice of plaintiffs' rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

## THE DEFENDANT

20.     The defendant identified herein as DOE-50.186.40.95 is currently known only by their Internet Protocol ("IP") Address 50.186.40.95 which on 2/3/15 at 10:26:09 AM UTC, was observed through direct TCP/IP connection as infringing the motion picture.

21.     Through geolocation, the IP address used by the defendant has subsequently been traced to the State of Oregon.

22.     Defendant's IP address has been observed as associated with the peer-to-peer exchange of hundreds of copyrighted titles through the BitTorrent network.

23.     The volume and titles of the activity associated with defendant's IP address indicates that the defendant is likely the primary subscriber of the IP address or someone who resides with the subscriber, as such activity indicates the defendant is an authorized user of the IP address with consistent and permissive access.

24.     The volume and titles of the activity associated with defendant's IP address indicates that the defendant is not a young child, but an adult with adult tastes.

25.     The defendant's IP address was at that time of observed infringement managed by Internet Service Provider ("ISP") Comcast, who on information and belief, generally assigns an IP address to a single party for extended periods of time, often for months, and provides Wi-Fi systems with notable pre-installed security and passwords.

26.     The records maintained by Comcast should be able to identify either the defendant, or the subscriber who contracted with Comcast for service who in turn is likely to have knowledge that will lead to the identity of the defendant.

27.     Plaintiffs intend to seek initial discovery to subpoena records from Comcast to ascertain the true identity of the defendant.

## BACKGROUND

### PEER-TO-PEER INTERNET PIRACY

28.     Digital piracy, including BitTorrent piracy costs the entertainment industry over $70 billion per year.

29.     As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines.  In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others involved in creative work.  And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

30.     In 2013, in recognition of the growing problems and challenges with counterfeiting and piracy, The Oregon House of Representatives passed House Memorial 2, which made the following findings:

> Whereas the United States and other nations share the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as … films… and technologies that affect the quality of life; and
> Whereas intellectual piracy and counterfeiting have a significant impact on Oregon's economy, and the economies of other states and of nations around the world, which results in job and earnings losses, reduced tax revenues and increased threats to public health and safety; and
> …
> Whereas protecting and enforcing intellectual property rights is crucial to the future of our innovation-based economy; and

      Whereas industries that use intellectual property extensively generate nearly $7.7 trillion in gross output and account for more than 60 percent of total exports from our nation; and
      Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and
      Whereas intellectual property infringement can undermine the nation's economic security; and
      Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and
      Whereas intellectual property, including trademarks, [are] essential …; and
             …
      Whereas failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade;
             …

31.     As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., ORS Chapter 647, and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of Oregon.

32.     Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks which promote and facilitate piracy generate millions of dollars in revenue through sales and advertising.

33.     A torrent site often promotes a motion picture through use of video trailers, images of movie posters, film stills and other marketing material, often copied from original authentic marketing material owned by the rights holders and incorporating rightsholder trademarks.

34.     To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and

networks. To accomplish this they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

35.     Defendant's participation in the BitTorrent exchange of plaintiffs' motion picture is the type of activity that torrent sites use to promote their business and likely directly furthered the for-profit business of at least one torrent site.

36.     Many parties, and possibly defendant have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiffs' movie.

37.     Many torrent sites have promoted the distribution and piracy of plaintiffs' motion picture through both the use of trailers and advertising material which bears the trademarks of plaintiffs' and the listing of the number of "seeders" or peers such as the defendant from whom the motion picture can be downloaded.

38.     The use of BitTorrent does more than cause harm through the simple theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to the participants such as the defendant and those working with the defendant, each of whom contribute to and further the enterprise.

39.     Based on activity observed associated with defendant's IP address, defendant is a prolific proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy and causing harm to plaintiffs.

FIRST CLAIM FOR RELIEF

COPYRIGHT INFRINGEMENT

40.     Defendant, without the permission or consent of plaintiffs, copied and distributed plaintiffs' motion picture through a public BitTorrent network.

41.  Defendant's actions infringed plaintiffs' exclusive rights under The Copyright Act.

42.  Defendant's conduct has been willful, intentional, in disregard of and indifferent to plaintiffs' rights with the intent to deprive plaintiffs of income and cause plaintiffs harm.

43.  As a direct and proximate result of defendant's conduct, plaintiffs' exclusive rights under 17 U.S.C. § 106 have been violated.

44.  One or more plaintiffs are entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

45.  The conduct of defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury.

46.  Pursuant to 17 U.S.C. §§ 502 and 503, plaintiffs are entitled to injunctive relief prohibiting defendant from further contributing to the infringement of plaintiffs' copyrights and ordering that defendant destroy all copies of and motion picture made in violation of plaintiffs' rights.

SECOND CLAIM FOR RELIEF

ALTERNATE THEORY – INDIRECT INFRINGEMENT

47.  Plaintiffs repeat and reallege each of the allegations above.

48.  Defendant obtained Internet access through an ISP and knowingly or with willful disregard permitted, facilitated and promoted the use of the Internet access for the infringing of plaintiffs' exclusive rights under The Copyright Act by others.

49.  Defendant failed to reasonably secure, police and protect the use of their Internet service against use for improper purposes such as piracy, including the downloading and sharing of the motion picture by others.

50.  Defendant's failure was with notice as piracy is in violation of the license for access granted to defendant by their ISP which issued defendant an IP address to access the internet.

51.     Defendant's failure was with notice as the volume of activity associated with defendant's IP address is such that defendant either knew of or should have known of the infringing activity.

52.     Defendant is liable as an indirect or secondary infringer.

53.     Defendant's conduct has been willful, intentional, in disregard of and indifferent to plaintiffs' rights.

54.     As a direct and proximate result of defendants' conduct, plaintiffs' exclusive rights under 17 U.S.C. § 106 have been violated.

55.     One or more plaintiffs are entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

56.     The conduct of defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiffs great and irreparable injury.

57.     Pursuant to 17 U.S.C. §§ 502 and 503, plaintiffs are entitled to injunctive relief prohibiting defendant from further indirect infringement of its copyrights and ordering that defendant destroy all copies of the motion picture made in violation of its rights and take such further steps as are necessary to prevent further indirect infringement.

### THIRD CLAIM FOR RELIEF

ORS 647.105 – STATE TRADEMARK

58.     Plaintiffs repeat and reallege each of the allegations above.

59.     Pursuant to ORS 647.095, a person who without the consent of Voltage uses the VOLTAGE PICTURES mark in connection with the distribution of a reproduction or counterfeit of a motion picture is liable for the equitable remedies provided in ORS 647.105.

60.     Pursuant to ORS 647.105, "The owner of a mark registered under this chapter may proceed in a civil action to seek an injunction against the … use, display or sale of a counterfeit or imitation of the mark."

61.   Voltage comes to this court seeking the equitable remedies provided by ORS Chapter 647, namely an injunction against those who would, without authorization, reproduce and distribute motion pictures which bear its registered trademark.

62.   Defendant, without the authorization or consent of Voltage, used and distributed a reproduction or counterfeit of a motion picture bearing Voltage's registered trademark VOLTAGE PICTURES.

63.   Defendant's conduct was in support of a furtherance of the commercial distribution of the motion picture by one or more for-profit commercial enterprises that promote and facilitate the distribution of plaintiffs' motion picture using Voltage's trademarks and trade name in association with such promotion, including the use of movie trailers and posters branded with the VOLTAGE PICTURES mark.

64.   The presentation and promotion of plaintiffs' motion picture for distribution through the BitTorrent file sharing system and torrent sites, when coupled with the use of movie trailers and posters, branded with the VOLTAGE PICTURES mark, is presumed to lead to confusion.

65.   The specific copy of the motion picture distributed by defendant is a degraded, reduced quality version of the original commercial released product and as such is an inferior counterfeit.

66.   Defendant has acted with knowledge and in bad faith in their infringement of Voltage's rights.

67.   Voltage is entitled to an order of from this court enjoining defendant from infringing its rights and directing defendant to delete all unauthorized copies of Voltage's motion pictures.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs pray for judgment against defendant as follows:

   A.   For entry of permanent injunction enjoining defendant from directly, indirectly or contributory infringing plaintiffs' rights, including without limitation by using the

      internet to reproduce or copy plaintiffs' motion pictures, to distribute plaintiffs' motion pictures, or to make plaintiffs' motion pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiffs. And further directing defendant to destroy all unauthorized copies of plaintiffs' motion pictures;

B.    Statutory damages pursuant to 17 U.S.C. § 504;

C.    For plaintiffs' reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

D.    For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

DATED: April 20, 2015.

                            Respectfully submitted,

                            CROWELL LAW

                            /s/ Carl D. Crowell
                            Carl D. Crowell, OSB No. 982049
                            carl@crowell-law.com
                            503-581-1240
                            Of attorneys for the plaintiffs